## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| *versus* | : | CRIMINAL NO. 21-69-JWD-RLB |
| | : | |
| JAYLON JAMARE SMULLEN | : | |

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Jaylon Jamare Smullen ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

## A.    THE DEFENDANT'S OBLIGATIONS

### 1.    Guilty Plea

The defendant agrees to enter a plea of guilty to Counts 1 and 2 of a Superseding Bill of Information charging him with Access Device Fraud, in violation of 18 U.S.C. 1029(a)(2), and Inducing a False Statement in the Acquisition of a Firearm, in violation of 18 U.S.C. 922(a)(6) and 2.

### 2.    Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court.  Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request.  Any financial

Jaylon Jamare Smullen  Page 1  June 13, 2022

information provided by the defendant may be used by the United States to collect any financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

### 3.     Waiver of Indictment

The defendant agrees to waive indictment in open court at arraignment.

## B.     UNITED STATES' OBLIGATIONS

### 1.     Non-prosecution/Dismissal of Charges

The United States agrees that, if the Court accepts the defendant's guilty plea, it will move to dismiss the Indictment, and it will not re-institute the charges contained in the Indictment.

### 2.     Motion for Third Point for Acceptance of Responsibility

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility

based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

### 3.    Sentencing Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States agrees to recommend that lower receivers not be included when calculating the number of firearms involved in the offense under §2K2.1(b)(1) of the United States Sentencing Guidelines.

## C.    SENTENCING

### 1.    Maximum Statutory Penalties

The maximum possible penalty on Count 1 is a term of imprisonment of 10 years, a fine of up to $250,000 or twice the gross gain or twice the gross loss, whichever is greater, and a term of supervised release of three years. The Court may also order restitution.

The maximum possible penalty on Count 2 is a term of imprisonment of 10 years, a fine of up to $250,000, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing.

### 2.    Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of

supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

### 3.    Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

### 4.    No Agreement Regarding Sentencing

Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

### 5.    Forfeiture

The defendant admits that he owns the property identified in the Notice of Forfeiture in the Superseding Bill of Information and that such property constitutes or was derived from proceeds of the offenses charged in Counts 1 and 2 of the Superseding Bill of Information. If such property is unavailable, the defendant agrees to forfeit to the United States a sum of money equal to the amount of the proceeds obtained by the defendant as a result of the

charged offenses in Counts 1 and 2.   The defendant consents to the entry of a personal money judgment against him in the amount that the Court determines represents the proceeds of his offenses, and he understands that the Court may enter a personal money judgment against him in such amount.

The defendant understands that forfeiture of his property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence.  The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States.  The defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and

determine that the defendant understands, the applicable forfeiture prior to accepting the

defendant's plea.

## D.    FACTUAL BASIS

The United States and the defendant stipulate to the following facts:

Beginning on or about a date unknown, but no later than in or about April 2020,
**SMULLEN** devised a scheme to fraudulently obtain firearms, lower receivers, and parts used
to build firearms, from federally licensed firearms dealers ("FFLs") located in the Middle
District of Louisiana and outside of the State of Louisiana.    In order to execute the scheme,
**SMULLEN** recruited, induced, procured, aided and abetted straw purchasers, including
Individuals A, B, and C, to complete the firearm transfer paperwork, such as ATF Form 4473,
in person, in order to obtain the firearms and receivers.    In doing so, **SMULLEN** induced,
procured, aided and abetted these individuals to falsify firearm transfer paperwork, such as
ATF Form 4473, by fraudulently representing that they were the actual purchasers/transferees
of the firearms or lower receivers.

For example, on April 13, 2020, **SMULLEN** ordered a Springfield, XD9, 9mm pistol,
bearing serial number AT164298 (hereinafter, ("Springfield 9mm pistol"), from Classic
Firearms, an FFL located in North Carolina, in the name of Individual A, for shipment to BJ's
Pawn Shop (BJPS), an FFL located in the Middle District of Louisiana.    On April 23, 2020, in
connection with the acquisition and transfer of the Springfield 9mm pistol, **SMULLEN**
induced Individual A to complete ATF Form 4473 at BJPS, in which Individual A falsely
represented that s/he was the actual buyer/transferee of the firearm, when in fact, the firearm
had been purchased by and for **SMULLEN.**

In another example, on August 25, 2021, in connection with the acquisition and transfer
of a Glock Model 30, .45 caliber semi-automatic pistol, bearing serial number BTZA258,
**SMULLEN** induced Individual C to complete ATF Form 4473 at Baton Rouge Police Supply
(BRPS), an FFL located in the Middle District, in which Individual C falsely represented that
s/he was the actual buyer/transferee of the firearm, when in fact, the firearm had been
purchased by and for **SMULLEN.**    At that time, **SMULLEN** was under felony indictment and
prohibited from receiving firearms.

It was further part of the scheme that **SMULLEN** obtained and used the means of
identification and stolen credit card information belonging to other individuals, including the
16-digit credit card numbers, cardholder names, and billing addresses, to order firearms,
firearm parts, and accessories, from multiple FFLs located outside of the State of Louisiana,
for shipment to FFLs and residential addresses in the Middle District of Louisiana.    Beginning
on or about at least September 1, 2020, and continuing to on or about at least April 25, 2021,

**SMULLEN** did knowingly, and with intent to defraud, used unauthorized access devices, namely, credit cards issued in the names of others, including Cardholders 1, 2, 3, 4, 5, 6, 7, 8, and 9, and others, to obtain things of value of at least $1,000, namely firearms, ammunition, and firearm parts and accessories, said conduct affecting interstate and foreign commerce.

For example, on September 1, 2020, while located in the Middle District of Louisiana, **SMULLEN** purchased via the internet a Ruger 16401, Model 57, 5.7x28mm semi-automatic pistol bearing serial number G41-47280 (hereinafter, "Ruger 5.7x28mm pistol") from Classic Firearms, an FFL located in North Carolina, for shipment to Firearms Range & Clothing ("FRC"), an FFL located in Baton Rouge. **SMULLEN** paid for the firearm using the stolen credit card number x3882, belonging to Cardholder 1, without his/her knowledge or consent. On September 4, 2020, in connection with the acquisition and transfer of the Ruger 5.7x28mm pistol, **SMULLEN** induced Individual B to complete ATF Form 4473 in which Individual B falsely represented that s/he was the actual buyer/transferee of the firearm, when in fact, the firearm had been purchased by and for **SMULLEN**. The total amount paid for the firearm using Cardholder 1's credit card number was $837.45.

In another example, on January 7, 2021, while located in the Middle District of Louisiana, **SMULLEN** ordered via the internet two (2) AR-15 upper receivers for a total of $783.94, from Veriforce Tactical, an FFL located in Arizona, using the credit card number x4796, belonging to Cardholder 9, without his/her knowledge or consent.

As a result of the scheme, over a one-year period, **SMULLEN** received and attempted to receive at least nine (9) completed firearms, over one hundred (100) lower receivers, and other firearm parts and accessories, totaling approximately $44,282.12, using the stolen credit card numbers of actual persons, without their knowledge or consent. At least one of the lower receivers was later recovered by law enforcement as a completed AR-15 in a crime committed in the Middle District on or about December 14, 2021.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of

facts is true and correct in all respects. The United States and the defendant agree that, had

this matter gone to trial, the United States could have proved such facts. The United States

and the defendant further agree that such facts are sufficient to support conviction of the

offense to which the defendant has agreed to plead guilty. The defendant understands that,

by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of

sentencing. Rather, in determining the factual basis for the sentence, the Court will consider

the stipulation, together with the results of the presentence investigation and any other

relevant information.

## E.    BREACH AND ITS CONSEQUENCES

### 1.    Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this

agreement:

> a.    failing to plead guilty to Counts 1 and 2 of the Superseding Bill
>       of Information at arraignment;
>
> b.    representing, directly or through counsel, to the United States or the
>       Court that he will not plead guilty to Counts 1 and 2 of the Superseding
>       Bill of Information;
>
> c.    moving to withdraw his guilty plea;
>
> d.    filing an appeal or instituting other post-conviction proceedings
>       not authorized in Section F(2);
>
> e.    disputing or denying guilt of the offense to which the defendant has
>       agreed to plead guilty or denying or disputing any fact contained in the
>       stipulated factual basis;
>
> f.    failing or refusing to waive indictment in open court at arraignment;
>
> g.    concealing or disposing of assets with the specific intent of shielding
>       such assets from forfeiture;
>
> h.    providing false, misleading, or incomplete information or
>       testimony, including financial information and testimony
>       provided pursuant to Section A(2), to the United States; or
>
> i.    violating the terms of this agreement or the supplement to the
>       plea agreement in any other manner.

**2.     Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement.  In particular, the United States may prosecute the defendant for any criminal offense.  In addition, any statements and information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation.  Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty plea.

**3.     Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant.  After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial

determination regarding breach.  However, the United States will obtain a judicial

determination regarding breach prior to using statements and information provided by the

defendant or any act of producing documents or items by the defendant pursuant to this

agreement or the supplement to the plea agreement, or any evidence or information derived

therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case.

The standard of proof in any proceeding to determine whether the plea agreement or the

supplement to the plea agreement has been breached is preponderance of the evidence.  To

prove a breach, the United States may use (1) any and all statements of the defendant, (2) any

and all statements of his counsel to the Court (including the United States Probation Office),

and (3) any representation by defense counsel to the United States that the defendant will not

plead guilty.

**F.**     **WAIVERS BY THE DEFENDANT**

      **1.**     **Waiver of Trial Rights**

      By pleading guilty, the defendant waives the right to plead not guilty or to persist in a

not guilty plea and waives the right to a jury trial.  At a trial, the defendant would have the

trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to

confront and examine adverse witnesses, to be protected against compelled self-

incrimination, to testify and present evidence, to compel the attendance of witnesses, and to

have the jury instructed that the defendant is presumed innocent and the burden is on the

United States to prove the defendant's guilt beyond a reasonable doubt.  By waiving his right

to a trial and pleading guilty, the defendant is waiving these trial rights.

## 2.    **Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives

the right to appeal his conviction and sentence, including any appeal right conferred by 28

U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any

post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. §

2255, or 18 U.S.C. § 3582(c)(2).  This waiver applies to any challenge on appeal or in any

post-conviction proceeding to any aspect of the defendant's sentence, including

imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of

supervised release or probation.  The defendant, however, reserves the right to appeal the

following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence

which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-

Guidelines sentence or "variance" which is above the guidelines range calculated by the

Court.  Notwithstanding this waiver of appeal and collateral remedies, the defendant may

bring any claim of ineffectiveness of counsel.

## 3.    **Waiver of Statute of Limitations**

The defendant hereby waives all defenses based on the applicable statutes of

limitation as to the offenses charged in the Indictment and Bill of Information and all

offenses that the United States has agreed not to prosecute, as long as such offenses are not

time-barred on the effective date of this agreement.  The defendant likewise waives any

common law, equitable, or constitutional claim of pre-indictment delay as to such offenses,

as long as such offenses are not time-barred on the effective date of this agreement.  The

waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4.    Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offenses charged in the Indictment and Bill of Information.  The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### G.    EFFECT OF AGREEMENT

### 1.    Effective Date

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States.  Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

### 2.    Effect on Other Agreements

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court.  In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating.  The

supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3.    Effect on Other Authorities

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4.    Effect of Rejection by Court

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his plea following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

## H.    REPRESENTATIONS AND SIGNATURES

### 1.    By The Defendant

I, Jaylon Jamare Smullen, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any

manner.  I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be.  I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Bill of Information and discussed it with my attorney.  I fully understand the nature of the charge, including the elements. I understand that I am entitled, under the Fifth Amendment of the United States Constitution, to have the charge instituted by a Grand Jury Indictment.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in the Bill of Information.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

*Jaylon Jamare Smullen*                           DATE: 06 – 21 – 2022
Jaylon Jamare Smullen
Defendant

Jaylon Jamare Smullen  Page 14   June 13, 2022

2. **By Defense Counsel**

I have read the Bill of Information and this plea agreement and have discussed both

with my client, Jaylon Jamare Smullen, who is the defendant in this matter. I am satisfied

that the defendant understands the agreement and the charge against him, including the

elements. I am also satisfied that the defendant is entering into the agreement knowingly and

voluntarily. This agreement, together with the supplement to the plea agreement, accurately

and completely sets forth the entire agreement between the defendant and the United States.

DATE: 6-21-2022

Rodney Baum
Counsel for Defendant

3. **By the United States**

We accept and agree to this plea agreement on behalf of the United States. This

agreement, together with the supplement to the plea agreement, accurately and completely

sets forth the entire agreement between the defendant and the United States.

DATE: 6-14-22

Ronald C. Gathe, Jr.
United States Attorney
Middle District of Louisiana

DATE: 6-23-22

Kristen Lundin Craig
Assistant United States Attorney
Middle District of Louisiana